IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSEFINA HERRERA,                         §
                                          §
              Plaintiff,                  §
                                          §
V.                                        §
                                          §       No. 3:14-cv-2725-BN
                                          §
CAROLYN W. COLVIN,                        §
Acting Commissioner of Social Security,   §
                                          §
              Defendant.                  §

## MEMORANDUM OPINION AND ORDER

Plaintiff Josefina Herrera seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed.

### Background

Plaintiff alleges that she is disabled as a result of back pain and depression. *See* Administrative Record [Dkt. No. 12 ("Tr.")] at 15, 147. After her application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on April 3, 2013. *See id.* at 7-30. At the time of the hearing, Plaintiff was 34 years old. She attended school through the 9th grade, is able to communicate in English, and has past work experience as a desk clerk, data entry clerk, telephone operator, and office clerk. *See id.* at 13, 44. Plaintiff has not engaged in substantial gainful activity since March 12, 2010. *See id.* at 9.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 46. Although the medical evidence established that Plaintiff suffered from degenerative disc disease of the lumbar spine status post laminectomy and lumbar fusion at L5-S1, chrondomalacia patella and plica in the left knee, obesity, major depressive disorder, and pain associated with both psychological factors and general medical condition, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 38. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work but could not return to her past relevant employment. *See id.* at 44. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a cashier, production worker, or inspector – jobs that exist in significant numbers in the national economy. *See id.*

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. In a single ground for relief, Plaintiff contends that the ALJ's determination that her back impairments did not meet a listing was not supported by substantial evidence.

The Court determines that the hearing decision must be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014);

*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-

step sequential evaluation process that must be followed in making a disability

determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner

typically uses a sequential five-step process to determine whether a claimant is

disabled within the meaning of the Social Security Act. The analysis is: First, the

claimant must not be presently working. Second, a claimant must establish that he has

an impairment or combination of impairments which significantly limit [her] physical

or mental ability to do basic work activities. Third, to secure a finding of disability

without consideration of age, education, and work experience, a claimant must

4

establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements

5

to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that the ALJ erred by concluding that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments," Tr. at 38, without providing any explanation

of why the ALJ made the adverse determination concerning Plaintiff's back impairments, *see* Dkt. No. 21 at 4-7.

At Step 3 of the sequential evaluation process, the ALJ considers whether a claimant has an impairment or combination of impairments that meets or equals a listed condition. *See* 20 C.F.R. § 404.1520(d). By statute, the ALJ is required to discuss the evidence offered in support of a claimant's application and to explain why he or she finds the claimant not to be disabled at each step. *See Audler*, 501 F.3d at 448. Where the ALJ has offered nothing to support a conclusion at Step 3, the Court cannot determine whether the decision is based on substantial evidence. *See id.* "[A] summary conclusion that a claimant fails to meet or equal the criteria of an unspecified listing is insufficient because it does not permit meaningful judicial review." *Dunn-Johnson v. Comm'r of the Soc. Security Admin.*, No. 3:10-cv-1826-BF, 2012 WL 987534, at *6 (N.D. Tex. Mar. 22, 2012) (citing *Audler*, 501 F.3d at 448). But the Court is not required to remand a case due to this legal error unless the claimant's substantial rights have been affected. *See id.* (citing *Audler*, 501 F.3d at 448; *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Here, the ALJ found that "claimant's impairments do not singularly or in combination meet or medically equal the required criteria of Listing 1.02, *Major dysfunction of a joint*; Listing 1.04, *Disorders of the spine*; Listing 12.04, *Affective Disorders*, or any other listed impairment. The signs, symptoms and history of treatment presented in the evidence of record are inconsistent with any impairment(s) of listing-level of severity." *See* Tr. at 38-39. The ALJ then analyzed Plaintiff's mental

impairments but did not identify any listed physical impairment for which Plaintiff's symptoms failed to qualify, nor did he provide any explanation as to how he reached the conclusion that Plaintiff's symptoms were not sufficiently severe to meet any listed physical impairment. The ALJ simply stated that "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526)." *Id.* at 38. The ALJ's Step-3 analysis concerning Plaintiff's physical impairments is insufficient under *Audler. See Dunn-Johnson*, 2012 WL 987534, at *6.

But, to be entitled to relief, Plaintiff must establish not only that the ALJ erred but also that this error casts into doubt the existence of substantial evidence to support the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In other words, the Court must still determine whether that error was harmless. *See id.* at 334. Procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays*, 837 F.2d at 1364. Thus, Plaintiff must establish that the ALJ's error at Step 3 was not harmless because the record supports that she in fact meets Listing 104A. *See Morris*, 864 F.2d at 335.

Plaintiff contends that she meets Listing 1.04, relating to disorders of the spine, for purposes of the Step-3 analysis. *See* Dkt. No. 21 at 5-7. Plaintiff asserts that she established disability under section A of the Listing. To meet Listing 1.04, a claimant must first establish a severe diagnosed spinal disorder "resulting in compromise of a

nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P., app. 1 § 1.04. In addition to the diagnostic component, a claimant must satisfy one of Listing 1.04's three subparts, 1.04A, 1.04B, or 1.04C – that is, the severity component. Each subpart describes different criteria that, if satisfied, prove the claimant's diagnosed spinal disorder is also severe enough to satisfy the Listing. To meet the criteria of Listing 1.04A, the record must contain sufficient evidence of (a) "nerve root compression characterized by neuro-anatomic distribution of pain," (b) "limitation of motion of the spine," (c) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and (d), "if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04A.

Evidence of motor loss includes muscle weakness or atrophy. *See, e.g.*, *Pannell v. Astrue*, No. 3:11-cv-2385-D, 2012 WL 4341813, at *4 (N.D. Tex. Sept. 21, 2012) ("motor loss (as shown by muscle weakness)"); *Davis v. Astrue*, No. 08-411, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A was not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities. That is, no weakness. Hand grip is good. No muscle atrophy was noted.'"). Evidence of sensory loss includes numbness and paresthesia. *See Strong v. Astrue*, No. 10-1406, 2011 WL 7394717, at *4 (W.D. La. Dec. 23, 2011) ("numbness" constitutes evidence of "[s]ensory and reflex loss"); *Williams v. Astrue*, No. 09-130, 2010 WL 989216, at *4 (W.D. La. Mar. 15, 2010) ("paresthesia or sensory loss"); *Morris v. Astrue*, No. 4:07-cv-547-A, 2008 WL 4791663,

at *2 (N.D. Tex. Oct. 24, 2008) (plaintiff was not disabled at Step 3 where his doctor "reported no issues with sensory loss, reflex changes, muscle spasms, muscle atrophy, or muscle weakness, all of which are objective signs included in Listing 1.04"); *Stephens v. Sullivan,* 792 F. Supp. 566, 570 (S.D. Ohio 1992) (objective evidence of "positive neurological findings" include "muscle spasm or atrophy, sensory loss, or reflex deficits").

Plaintiff has the burden of proof at Step 3 of the sequential evaluation process. *See Greenspan,* 38 F.3d at 236. The undisputed evidence shows that Plaintiff injured her back on March 14, 2010, when she slipped and fell down some stairs at work. *See* Tr. at 222-24. She subsequently had two back surgeries. On October 28, 2010, Plaintiff had a laminectomy at L5-S1, *see id.* at 240-41, and, on May 16, 2012, Plaintiff had a lumbar fusion at L5-S1, *see id,* at 395. Plaintiff contends that there is evidence in the record that her severe lumbar spine impairment meets the criteria of Listing 1.04A.

For evidence of nerve root compression, Plaintiff cites to several diagnoses of radiculopathy. During a March 18, 2010 Initial Comprehensive Evaluation, Dr. Tuan Trinh, D.O., noted mild radicular symptoms present to the left lower extremity with mild to moderate weakness. *See* Tr. at 239. On April 19, 2010, neurologist Jonathan E. Walker, M.D., noted that EMG results showed significant abnormalities suggesting a bilateral S1 radiculopathy. *See id.* at 245. On June 4, 2010, Dee L. Martinez, M.D., DABR, noted that "radiculopathy is confirmed by physical examination and MRI study." *Id.* at 419. On October 28, 2010, surgeon Francisco Battle, M.D., noted lumbar radiculopathy in both preoperative and postoperative diagnoses. *See id.* at 240, 263. On

September 2, 2011, Ronnie Shade, M.D., P.A., assessed lumbar radiculopathy, left lower extremity, during an evaluation. *See id.* at 362-63. And on February 13, 2013, James L. Carlisle, M.D., P.A., assessed lumbar radicular symptoms. *See id.* at 632. Plaintiff also cites to a positive Milgram's test in which lower back pain prevented her from raising her legs more than two to three inches from the examining table. *See id.* at 237.

For evidence of neuro-anatomic pain distribution, Plaintiff cites to her reports of back pain that radiated down her left leg. On March 14, 2010, Plaintiff complained of low back pain with pain shooting down her left leg when she was treated at the emergency room. *See id.* at 225. Four days later, she complained to Dr. Trinh of lower back pain with constant severe stiffness and restricted movement and inflexibility radiating to the left posterior thigh and left calf area. *See id.* at 236-37. On September 2, 2010, Dr. Shade noted a history of low back pain and stated that Plaintiff was complaining of left leg pain, and numbness, tingling and weakness in the left leg. *See id.* at 362. During a preoperative examination on October 21, 2010, Plaintiff stated that she had back pain that radiated down her left leg to her toes. *See id.* at 260. In a postoperative visit with Dr. Trinh on December 22, 2010, Plaintiff complained of low back pain that had increased in severity. She described it as constant severe stiffness, restricted movement and inflexibility radiating to the buttocks, left posterior thigh and left knee. *See id.* at 272. Dr. Battle noted in postoperative reports on November 4, 2010 and March 4, 2011 that Plaintiff had near complete resolution of her preoperative symptomatology, which included low back pain with radiation mainly into to the left

11

lower extremity along the lateral thigh and calf, and intermittently into the lateral aspect of the left ankle with associated numbness and tingling. *See id.* at 283, 285. On June 15, 2012, Dr. James noted a history of low back pain with some numbness and tingling to the right mid thigh with occasional left foot swelling. *See id.* at 452. On January 11, 2013, Plaintiff described her current symptoms to examining consultant Dmitry Golovko, M.D., P.A. as back pain that varies in intensity and occasionally is "shocking," and tingling down both lower extremities *See id.* at 639.

For evidence of limitation of motion of the spine, Plaintiff cites to medical records documenting her reduced range of motion. *See id.* at 224 (decreased range of motion), 238 (spinal range of motion: lumbar: pelvic sacral angle 30 degrees, flexion 39 degrees, extension 11 degrees, right lateral flexion 9 degrees, left lateral flexion 8 degrees), 283 (lumbar range of motion was decreased in forward flexion secondary to pain), 292 (moderate difficulties with range of motion in area of injury), 295 (objective improvement in lumbar range of motion: flexion 51 degrees, extension 17 degrees, right lateral flexion 30 degrees, left lateral flexion 35 degrees), 312 (objective improvement in lumbar range of motion: flexion 30 degrees, extension 10 degrees, right lateral flexion 30 degrees, left lateral flexion 25 degrees), 419 (moderately limited range of motion by 25%), 542 (objective improvement in range of motion but should continue treatment to increase range of motion), 631 (lumbosacral spine range of motion: flexion 40 degrees, extension 16 degrees, right rotation 20 degrees, left rotation 20 degrees, right lateral flexion 20 degrees, left lateral flexion 22 degrees), 639 (flexion 45 degrees, extension 0-5 degrees, left lateral bending 10 degrees, right lateral bending 10 degrees,

pain with global lumbar AROM), 644 (decreased lumbar range of motion with increased pain upon movement), 645 (decreased range of motion with pain), 652 (lumbar flexion 47 degrees, lumbar extension 20 degrees, right lateral flexion 20 degrees, left lateral flexion), 663 (lumbar flexion 45 degrees, lumbar extension 19 degrees, right lateral flexion 18 degrees, left lateral flexion 19 degrees), 677 (range of motion in lumbar spine was reduced).

For evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," Plaintiff cites to medical records documenting muscle weakness. On March 18, 2010, muscle weakness was noted in testing of Plaintiff's hip flexors, hip adductors, hip lateral rotators, and medical rotators of the hip, *see id.* at 238, and Dr. Trinh noted mild to moderate weakness, *see id.* at 239. On October 26, 2010, notes from Brookhaven Family Medicine indicate that Plaintiff had +4/+5 strength in the left lower extremity, otherwise 5/5 throughout. *See id.* at 261. On November 4, 2010, Dr. Battle also notes that a motor exam reveals 4+/5+ strength in the quadriceps, tibialis anterior, extensor hallucis longus and gastroconemius muscles on the left, otherwise 5/5 throughout. *See id.* at 284. On May 10, 2011, Plaintiff underwent a Physical Performance Evaluation, which found that she had weakness due to deconditioning in the area of injury and weakness when one side was compared to the other, *see id.* at 293, 299-300, and it was recommended that she would benefit from a work hardening program to, among other things, increase strength, *see id.* at 312. On September 2, 2011, Dr. Shade noted that motor examination was normal in the right lower extremity and slightly decreased in the left

lower extremity in the hamstrings, quadriceps, and gastrocnemius, otherwise, within normal limits. *See id.* at 363. On February 13, 2013, Dr. Carlisle noted that manual muscle testing of the left lower extremity to include hip flexion, hip extension, knee flexion, dorsiflexion, plantar flexion, and extensor hallucis longus flexion was 4/5. *See id.* at 632. Plaintiff also cites to medical records documenting positive straight-leg raising tests. On March 18, 2010, Plaintiff experienced pain during a Lasegue Test. *See id.* at 237. On May 10, 2010, Plaintiff's straight leg raising on the left was 57/80, *see id.* at 295, and on February 22, 2011, it was 52/80, *see id.* at 312.

Defendant argues that Plaintiff fails to show that her back impairment meets all of the requirements for presumptive disability, including those in the introductory paragraph of Listing 1.04. For Plaintiff to show that her impairment matches a listing, her impairment must meet all of the specified medical criteria, including the diagnostic description in the listing's introductory paragraph. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Randall v. Astrue*, 570 F.3d 651, 659 (5th Cir. 2009). The introductory paragraph of Listing 1.04A refers to disorders of the spine, which result in compromise of a nerve root or the spinal cord. Plaintiff was diagnosed with lumbar radiculopathy, herniated nucleus pulposus at L5-S1, *see* Tr. at 240, which is one of the disorders expressly mentioned in the listing. But Defendant asserts that physicians explicitly and consistently noted that Plaintiff had no nerve root compromise. For example, an MRI taken on April 6, 2010 showed a disk bulge at L5-S1 and "some mild, minor neuroforaminal stenosis but otherwise her central canal is nice and open." *Id.* at 242,

408. Also, in an October 28, 2010 operative report, Dr. Battle states that the "underlying nerve root was seen to be without obstruction." *Id.* at 241.

Defendant also argues that Plaintiff ignores evidence that is unfavorable to her claim. For example, to counter Plaintiff's evidence concerning motor loss, sensory loss, and muscle weakness, Defendant cites to evidence in the record documenting normal gait, normal sensation, and normal muscle strength. On November 4, 2010, December 2, 2010, and March 4, 2011, Dr. Battle noted that motor exams revealed Plaintiff had no difficulty with toe or heel walking and tandem walked within normal limits. *See id.* at 284, 286, 289. On October 10, 2012, Dr. J. S. Harris noted that a physical examination show no loss of sensation. *See id.* at 671. On July 11, 2012, August 29, 2012, and November 27, 2012, Dr. Martinez noted normal sensation at the left/right lower dermatomal levels. *See id.* at 645, 680, 691, 693. On January 13, 2013, Dr. Golovko noted that, during a sensory examination, Plaintiff voiced a stocking-type of a deficit in her left lower extremity. Dr. Golovko found it was neither dermatomal nor particularly physiological. *See id.* at 640. On February 13, 2013, Dr. Carlisle noted that Plaintiff was able to heel and toe walk secondary to balance. *See id.* at 632. Defendant also cites to evidence in the record documenting negative straight leg tests. On November 4, 2010, December 2, 2010, and March 4, 2011, Dr. Battle noted that straight leg raising was negative bilaterally, *see id.* at 284, 286, 288, and on September 2, 2011, Dr. Shade noted that straight leg raises were negative, *see id.* at 363. Thus, Defendant argues, the intermittent and inconsistent abnormal findings cited by

Plaintiff are insufficient to satisfy Listing 104A. *See Wyer v. Comm'r of Soc. Sec. Admin.*, No. 13-201-JWD-RLB, 2015 WL 589738, at *6 (M.D. La. Feb. 11, 2015).

The criteria in the Listings are designed to be "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). This is because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Because Plaintiff failed to show consistent satisfaction of the Listing's criteria over a period that lasts or is expected to last at least 12 months, *see Wyre*, 2015 WL 589738, at *6, she has failed to meet the heavy burden to show that the ALJ's determination at Step 3 was not supported by substantial evidence. Accordingly, the undersigned concludes that the ALJ's error was not prejudicial.

## Conclusion

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: September 14, 2015

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE